[704 NYS2d 295]

In the Matter of FRANCIS A. ZARRO, JR. (Admitted as FRANCIS ZARRO), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, March 13, 2000

**APPEARANCES OF COUNSEL**

*Gary L. Casella,* White Plains (*Gary D. Egerman* of counsel), for petitioner.

*Gentile, Brotman & Benjamin,* New York City (*Susan Brotman* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The respondent was served with a petition that contained six charges of professional misconduct against him. Charge Six was withdrawn and Charge Two was partially withdrawn by the Grievance Committee. In his answer, the respondent denied violating the Disciplinary Rules. After a hearing, the Special Referee sustained all five charges against the respondent. The Grievance Committee now moves to confirm, and the respondent cross-moves to disaffirm, the Special Referee's report.

Charge One alleged that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Code of Professional Responsibility DR 1-102 (a) (4) (22 NYCRR 1200.3 [a] [4]), and conduct adversely reflecting on his fitness to practice law, in violation of Code of Professional Responsibility DR 1-102 (a) (8) (now [7]) (22 NYCRR 1200.3 [a] [7]).

In the summer and fall of 1995, the respondent was retained to represent a group of 25 claimants (hereinafter the plaintiffs) in a $16.5 million lawsuit. The plaintiffs were allegedly solicited by Scott J. McKay Wolas, Esq. to invest in a scotch whiskey distribution plant in the Far East. Mr. Wolas, whose law office was in Manhattan, disappeared with the funds and became a fugitive. He was suspended from the practice of law on an interim basis by an order of the Appellate Division, First Department, dated October 30, 1997, and subsequently disbarred (*see, Matter of Wolas,* 252 AD2d 346). The lawsuit sought actual and punitive damages from Mr. Wolas and companies that were believed to have had a role in the matter.

Prior to being retained by the plaintiffs, the respondent filed for bankruptcy in or about July 1994, listing assets of $22,000 and liabilities of $20,073,350.

Pursuant to the terms of the retainer agreements that he signed with the plaintiffs, the respondent collected a retainer from each member of the plaintiff group in the amount of 4% of his or her claim. The total amounted to approximately $450,000, some of which the respondent deposited into an operating account maintained by him at the First Hudson Valley Bank. In addition, the respondent was to receive a

contingency fee of 15% to 20% of any recovery, depending on the terms of the retainer agreements with the 25 individual plaintiffs. The retainer agreements did not provide for the respondent to receive an hourly rate, nor did they specify that he would return any unused portion of the retainer funds. If the claims could not be settled, the respondent would retain litigation counsel, whose fees would be paid from the retainers he received.

The respondent was unable to settle the matter, and in late 1995, he disbursed approximately $100,000 of the retainer to obtain the litigation support of the law firm of Stillman, Friedman & Shaw. That firm drafted and filed a complaint and an amended complaint on behalf of the plaintiffs and appeared as counsel of record in the matter. A fee dispute developed between the respondent and Stillman, Friedman & Shaw when the respondent failed to pay the firm's outstanding bill.

By letter dated April 2, 1996, Charles A. Stillman, Esq. informed the plaintiffs that, since the respondent had failed to pay their $91,813.55 outstanding bill, a motion to withdraw as counsel would be made. Before the motion could be made, the respondent discharged Stillman, Friedman & Shaw and retained the law firm of Richards & O'Neill, L. L. P., as litigation counsel. Richards & O'Neill was substituted as counsel of record in the action. The complainant, Kenneth I. Schacter, is a member of the law firm of Richards & O'Neill and worked on the matter.

The respondent's retainer agreement with Richards & O'Neill provided that the firm would be paid a $50,000 retainer to cover its initial fees and expenses. The retainer would be replenished to $50,000 within five days of the respondent being notified that the balance had fallen below $10,000. On May 23, 1996, Mr. Schacter advised the respondent by telephone that the balance had fallen below $10,000. The respondent failed to abide by the terms of the retainer agreement by not sending a check within five days. On May 31, 1996, the respondent forwarded a check to Mr. Schacter in the amount of $50,000, but stopped payment on the check before it was negotiated. The respondent had insufficient funds in the account to cover the $50,000 check when it was issued.

The respondent had an ethical obligation to make certain that client funds were available to satisfy the terms of the retainer agreement he entered into with litigation counsel on behalf of his clients.

Charge Two alleged that the respondent failed to promptly refund any part of a fee paid in advance that was not earned,

in violation of Code of Professional Responsibility DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]).

In correspondence dated April 23, 1996, Rory J. Cutaia, Esq. advised the respondent that Alfred Barone, a member of the plaintiff group, was terminating his services and requested a refund of the unused portion of his retainer. By letter dated April 30, 1996, the respondent advised Mr. Cutaia that he received the April 23, 1996 correspondence and would be returning Mr. Barone's retainer shortly. The respondent failed to return to Mr. Cutaia any portion of Mr. Barone's unused retainer.

Charge Three alleged that the respondent failed to promptly refund any part of a fee paid in advance that was not earned, in violation of Code of Professional Responsibility DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]).

The plaintiff group terminated the respondent's services on June 14, 1996, and Mr. Schacter requested the return of the unused portions of the retainers on behalf of the plaintiffs. The respondent failed to return any of the unused retainers in the sum of approximately $300,000.

Charge Four alleged that the respondent failed to promptly refund any part of a fee paid in advance that was not earned, in violation of Code of Professional Responsibility DR 2-110 (a) (3) (22 NYCRR 1200.15 [a] [3]).

On January 13, 1998, the respondent entered into a stipulation of settlement to resolve the litigation between himself and the members of the plaintiff group by making restitution in the amount of $225,000, by withdrawing any claim he might have to any of the proceeds of the Wolas litigation, and by agreeing to discontinue his claims in that litigation. The respondent agreed to pay the $225,000 by wire transfer or certified check no later than 60 days after the stipulation of settlement was signed on January 13, 1998. To date, the respondent has failed to make restitution.

Charge Five alleged that the respondent failed to maintain complete records of all funds of clients in his possession and to appropriately account to his clients for such funds, in violation of Code of Professional Responsibility DR 9-102 (c) (3) (22 NYCRR 1200.46 [c] [3]).

The respondent's services were terminated by the plaintiff group on June 14, 1996. Mr. Schacter requested an accounting of the retainer funds that the respondent received. To date, the respondent has failed to provide his former clients with an ap-

propriate accounting of the retainer funds, despite their repeated requests.

Based on the evidence adduced at the hearing, including the respondent's admissions, all five charges were properly sustained by the Special Referee.

In determining the appropriate measure of discipline to impose, the respondent asks the Court to consider the fact that, on June 9, 1999, he wire transferred $100,000 into his attorney's escrow account in partial payment of the money that he owes the plaintiffs in the Wolas matter. The respondent also asks the Court to consider his financial circumstances at the time, that he performed substantial services for the plaintiffs, and that he intends to fully refund the unearned portion of their retainers. By letter dated December 20, 1999, the respondent's counsel informed the Court that the respondent made a payment in the amount of $45,737.72 to the complainant.

The respondent's prior disciplinary history consists of a letter of admonition that was issued in 1994 by the Appellate Division, First Department, for failing to promptly refund an unearned fee.

Under the totality of the circumstances, the respondent is disbarred for his professional misconduct.

MANGANO, P. J., O'BRIEN, RITTER, S. MILLER and ALTMAN, JJ., concur.

Ordered that the Grievance Committee's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent's cross motion to disaffirm the Special Referee's report is denied; and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, the respondent, Francis A. Zarro, Jr., is disbarred, and his name is stricken from the roll of attorneys and counselors-at-law; and it is further,

Ordered that the respondent shall promptly comply with this Court's rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10); and it is further,

Ordered that pursuant to Judiciary Law § 90, effective immediately, Francis A. Zarro, Jr., is commanded to desist and refrain from (1) practicing law in any form, either as principal or as agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, Judge, Justice, board, commission, or other public authority, (3) giving to an-

other an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law.